UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 20-128-DCR |
| V. | ) ) | |
| RUBEN CORRALES, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Ruben Corrales' motion to revoke the United States Magistrate Judge's order of detention pending trial. [Record No. 56] The motion will be denied because the factors outlined in 18 U.S.C. § 3142(g) weigh in favor of pretrial detention.

**I. Background**

Corrales is charged with conspiring with Defendant Ruben Molina and others to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 846, and distributing 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1). At his initial appearance, the United States moved to detain Corrales pending trial, as his charges trigger a presumption that no conditions of release would reasonably assure his appearance and the safety of others. *See* 18 U.S.C. § 3142(e)(3)(A).

### A. The November 19, 2020 Detention Hearing

United States Magistrate Judge Matthew A. Stinnett held a detention hearing on November 19, 2020.[1] Corrales' 25-year-old fiancée, Karina Chao, testified during the hearing. Prior to Corrales' November 11, 2020, arrest in Lexington, Kentucky, he lived with his aunt in Miami, Florida. But Chao indicated that, if released pending trial, Corrales would reside at her apartment in Miami, where she would supervise him and report any violations of his conditions of release. Chao further testified that she would arrange for his transportation to any hearings or other required appointments. Additionally, Chao reported that Corrales takes care of his disabled mother and father, 80-year-old grandmother, aunt, and three-year-old daughter.

The United States presented the testimony of United States Probation Officer Brandy Warner, who prepared a bond report regarding Corrales' risk of flight and danger to others if released pending trial. Warner's investigation revealed that Corrales was arrested five times in Miami between 2015 and 2020. His previous charges include cocaine possession, cannabis possession, reckless driving, and strongarm robbery. However, it appears that the prosecutor abandoned the charges in most, if not all, of these cases and Corrales was not convicted of any crimes.

Corrales advised Warner that he was previously employed as a security guard and a mover, but had not worked within the last year because of injuries sustained in a motorcycle accident. Warner recommended that Corrales be detained pending trial. Based on the nature of the instant offenses, she believed him to be a danger to the community. Further, because of

---

[1] With the parties' consent, Magistrate Judge Stinnett conducted a joint arraignment and detention hearing for Defendants Corrales and Molina.

he has no verifiable employment history or ties to this community, she believed he constituted a flight risk if released.

The government also presented the testimony of Drug Enforcement Administration ("DEA") Special Agent Jason Moore. On October 30, 2020, a cooperating source negotiated the purchase of two pounds of methamphetamine *via* text message from an individual using a cell phone number with a 786 prefix ("the 786 number"). Officers surveilling Defendant Molina's residence in Lexington, Kentucky, observed a vehicle leaving Molina's residence and traveling to the planned meeting location. A then-unidentified courier exited the vehicle and provided approximately five pounds of methamphetamine to the cooperating source.[2]

Molina subsequently contacted the cooperating source asking for additional payment for the methamphetamine delivered on October 30, 2020. It was agreed that the cooperating source would pay Molina $1,000.00 on November 11, 2020. In the meantime, officers tracked the location of the 786 number. In the days leading up to November 10, 2020, the phone associated with the 786 number pinged in Miami, Florida; Orlando, Florida; Las Vegas, Nevada; Atlanta, Georgia; and back to Lexington, Kentucky. Special Agent Moore was at Bluegrass Airport in Lexington on November 10, 2020, and observed an individual believed to be Corrales disembarking a flight.

On November 11, 2020, Molina and Corrales traveled to a predetermined meeting spot in Lexington where the cooperating source paid Molina $1,000.00. Agents subsequently stopped Molina's vehicle and placed Molina and Corrales under arrest. In Corrales' seat lay a

---

[2] According to Moore, the cooperator thought he/she and Molina were negotiating the time the transaction would take place when Molina was actually negotiating the quantity of crystal methamphetamine to be delivered. The price of the crystal methamphetamine was $3,800.00 per pound.

cell phone, which rang when officers dialed the 786 number. Agents reviewed surveillance video from the October 30, 2020, transaction and identified Corrales as the courier who had delivered the methamphetamine to the cooperating source.

Corrales agreed to speak to officers upon his arrest. He stated that he was in Lexington to attend the birthday party of a person he would not name. And when asked about his recent travels, he stated that he had come from Miami, but corrected himself and said that he had flown from Las Vegas the previous night. Corrales either could not or would not answer other questions including what time of day he arrived in Lexington; whether he had a telephone number; and whether he was carrying a telephone at the time of his arrest.

The magistrate judge concluded that Corrales had produced sufficient evidence to overcome the presumption of detention with respect to both risk of flight and danger to the community. And while he believed that detention was not justified based on the defendant's risk of nonappearance, he concluded that the United States offered clear and convincing evidence that Corrales poses a danger to another person or the community. Accordingly, he was ordered detained pending trial.

### B.  The January 15, 2021 Hearing

Corrales filed a motion for revocation of the detention order, arguing that the magistrate judge relied on evidence not considered during the evidentiary hearing. Indeed, the magistrate judge indicated that he initially viewed the alleged conduct as a "single, isolated drug transaction" and was prepared to grant the defendant's motion for release. However, after viewing "additional evidence in the record not raised at the detention hearing," he determined that release was improper based on "considerable proof of Corrales' close ties to prominent

drug traffickers (namely, his co-defendant) and his intimate, prolonged involvement in a large-scale drug scheme."

The United States opposed Corrales' motion to revoke the detention order. It contended that it established that there were no conditions of release that would reasonably assure Corrales' appearance at trial or assure the safety of others and the community.

This undersigned held an evidentiary hearing on January 15, 2021, to allow the parties to present additional evidence and arguments regarding the defendant's motion. Corrales sought to supplement the record by questioning Special Agent Moore concerning events not discussed during the November 19, 2020 hearing. Counsel for Corrales questioned Moore about an incident that occurred on January 19, 2020, which Moore described in the affidavit in support of the criminal complaint in this case.[3] According to Moore, Defendant Molina called 9-1-1 when Corrales and two other individuals suffered illnesses related to suspected opiate exposure at Molina's residence.[4] First responders saw evidence of drug trafficking and called the Lexington Police Department narcotics enforcement unit.

Corrales was described as conscious and alert when EMTs arrived, but lethargic and slightly disoriented. He was treated for exposure but released when he refused to be transported to the emergency room for additional treatment. Packaging materials seized from the residence later tested positive for the presence of cocaine. No large quantities of cocaine were recovered at the location, but Moore was unaware if such substances "might have

---

[3] Moore reported that he obtained information from Detective Brian Cobb of the Lexington Police Department, who executed the search warrant of Molina's residence on January 19, 2020.

[4] Molina lived at 3861 Ormesby Place in Lexington, Kentucky in January 2020. By October 30, 2020, he had moved to 1168 Autumn Ridge Drive in Lexington.

disappeared before first responders arrived." Moore additionally noted that the kitchen table appeared to have been recently wiped down. Moore theorized that the three individuals were exposed to fentanyl or some analog of the substance while repackaging controlled substances. While Molina and another individual were charged with drug trafficking in the Fayette County Circuit Court based on this incident, Corrales was not charged.

Moore also elaborated on information provided by the cooperating source who participated in the controlled purchase of methamphetamine on October 30, 2020. In July 2020, the cooperating source had identified Molina as his/her source of "pound quantities" of methamphetamine and "ounce quantities" of cocaine. The source advised officers that Molina frequently used runners to deliver drugs and retrieve money. Consistent with the January 2020 incident, the source stated that Molina had recently been arrested following what he/she reported to be the overdose of three individuals at Molina's residence after the three ingested fentanyl they mistook for cocaine. The source added that, after the overdoses, police located "edibles" in the house for which Molina and his brother were charged.

Moore testified that, following the evidentiary hearing before the magistrate judge, he had additional relevant discussions with a cooperating witness. The cooperating witness, who is represented by counsel, described his/her familiarity with Molina and Corrales, and reported participating in drug transactions with the defendant. Based on information provided by the cooperating witness, Moore suggests that the indictment filed in this case may be expanded to include additional time periods. Additionally, the cooperating witness is prepared to testify in upcoming proceedings.

Moore's testimony also supports the conclusion that Corrales was not truthful about his prior trips to Kentucky. At the time of his arrest in November 2020, Corrales advised officers

that his most recent trip to Lexington was a year earlier. However, Moore obtained flight records showing that from the period of July 2020 to the date of arrest, Corrales flew to Lexington on three separate occasions. These records corroborate information provided by the cooperating source who had seen Corrales in Lexington on a "much more frequent basis than zero times in the past year."

Moore also repeated his prior testimony that Corrales was observed delivering methamphetamine to a cooperating source on October 30, 2020. The substance was recently tested at DEA's Mid-Atlantic laboratory, where it weighed in excess of 2,000 grams and was revealed to be 93 percent pure methamphetamine. According to Moore, this is significant because any substance testing over 80 percent purity is considered crystal methamphetamine. Moore further testified that a seizure of this nature is significant in the Lexington community.

Based on all evidence and information available to him at this time, Moore opined that the activity charged in this case is part of a "top tier" drug trafficking organization based upon the number of individuals involved, which includes kilogram amounts of cocaine and fentanyl and hundreds of pounds of marijuana. Thus, Moore maintains that Corrales is both a flight risk and a danger to the community.

## II. Standard of Review

This Court reviews the magistrate judge's order of detention *de novo*. *See United States v. Neal*, 2019 WL 5597297, at *1 (W.D. Ky. Oct. 30, 2019). Based on the defendant's charges, there is a presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). To rebut the presumption, the defendant must introduce "at least some evidence" that he poses neither a flight risk nor a risk of danger. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The

government maintains the burden of persuasion to show that no conditions of release can assure that the defendant will appear and to assure the safety of the community. *Id.*

In determining whether the government has met its burden of persuasion, the Court considers:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III. Analysis

### A. Presumption of Detention

The magistrate judge determined that Corrales presented "sufficient, credible evidence" to rebut the presumption of detention with respect to his risk of flight and danger to the community. In reaching this conclusion, the magistrate judge relied heavily on the testimony of Karina Chao, who stated that, if released pending trial, Corrales could live at her apartment in Miami. Chao testified that Corrales "diligently shares custody of his minor daughter" and "assists in caring for his parents, grandmother, and aunt, who live nearby in Miami." However, despite Chao's purported intimate knowledge of Corrales' day-to-day activities, she could not explain why Corrales had visited Lexington in November 2020. And while Chao claimed she

would report any violations if Corrales were released, her relationship as his fiancée casts doubt upon that assertion.

Unlike the magistrate judge, the undersigned is not persuaded that the defendant has overcome the presumption in favor of detention with respect to flight risk or danger to the community. However, even if he had, each of the factors outlined in 18 U.S.C. § 3142(g) supports detaining him pending trial.

### B.  § 3142(g) Factors

The nature and circumstances of the offenses alleged weigh in favor of denying the pending motion to revoke the detention order. The defendant is accused of participating in a large-scale drug trafficking organization and is specifically charged with trafficking a substantial quantity of highly pure crystal methamphetamine. If convicted, he faces a statutory mandatory term of not less than 10 years and up to life imprisonment. Accordingly, the nature of circumstances of the offenses charged weigh strongly in favor of pretrial detention.

The next factor concerns the weight of the evidence balanced against the "factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community." *Stone*, 608 F.3d at 948 (quoting *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). While the defendant is presumed innocent of the charged offenses, the testimony of Special Agent Moore provides substantial evidence of Defendant Corrales' dangerousness and risk of flight.

According to Moore, Corrales has participated in significant drug trafficking activity within the Eastern District of Kentucky. Specifically, Moore testified that Corrales was repackaging controlled substances (likely involving fentanyl or a fentanyl analog) at Molina's residence in January 2020. A cooperating defendant identified Corrales as being present at

various controlled substance transactions during a six-month period in 2020. Moore further testified that Corrales was captured on surveillance video delivering a large quantity of highly pure of methamphetamine on October 30, 2020. Finally, Moore indicated that a phone possessed by Corrales was used to negotiate the transaction.

Moore's testimony also establishes that Corrales is quite mobile. Contrary to what Corrales told the arresting officers, flight records reveal that he flew from Miami to Lexington on multiple occasions in 2020. And cell phone pings indicate that he travels to various locations throughout the United States. While recognizing that the defendant is presumed innocent of the offenses charged, the weight of the evidence is substantial and favors pretrial detention.

The defendant's history and characteristics also weigh in favor of detention. Corrales is 26 years-old and is a lifelong resident of Miami, Florida. He has been in a relationship with Chao for less than two years. He and his former partner share custody of his three-year-old daughter. All of his family reside in the Miami area.

And despite being in "excellent physical health," Corrales has not been employed for the past year due to reported unspecified hand and knee injuries sustained in a motorcycle accident. He left high school after completing his freshmen year, but later obtained his Graduate Equivalency Diploma. He obtained certification to become a barber, but it does not appear that he has worked in that field. Corrales does not have a stable employment history and has no apparent means of funding his transportation for court appearances or any other expenses associated with supervision. To the extent Chao contends she will meet Corrales' financial needs, her ability to do so has not been verified.

Notably, Corrales has no ties to the Eastern District of Kentucky outside of the criminal conduct alleged. *See United States v. Rivera*, 90 F. Supp. 2d 1338, 1343 (S.D. Fla. 2000) (noting that court should consider a defendant's ties to the community in which he faces prosecution). While Corrales contends that he has never failed to appear for Court, it appears that the prosecutor abandoned the charges in each of his previous criminal cases. Here, Special Agent Moore characterized the defendant's conduct as part of a "top tier" drug trafficking organization. While detention may not be based solely on the defendant's association with others, the Court need not ignore the reality that such organizations are likely to have at their disposal the means to assist members in avoiding prosecution.

Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947 n.6 (citing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community"). Regardless of whether Lexington or Miami is considered the relevant community, the government has shown that the defendant presents a substantial risk to others. While Corrales has not been convicted of drug trafficking in Florida, his numerous arrests for drug possession and lack of employment indicate that he is likely to engage in criminal activity in that community. Further, the defendant's record is not devoid of violent conduct. Although the prosecutor eventually abandoned the charge, Corrales was arrested for and charged with strongarm robbery in 2015. Accordingly, this factor weighs in favor of detention.

## IV. Conclusion

The defendant has not overcome the presumption of detention, but even if he had done so, evaluation of the factors in § 3142(g) compel detention pending trial. The United States has established by a preponderance of the evidence that the defendant presents a flight risk and, by clear and convincing evidence, that he presents a risk a danger to the community if released. In other words, there is no condition or set of conditions that will reasonably assure his future appearance in this Court or provide adequate protection for the community if he is released pending trial.

Accordingly, it is hereby

**ORDERED** that Defendant Corrales' motion to revoke the detention order [Record No. 41] is **DENIED**.

Dated: January 21, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky